*EXHIBIT G*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BILT TECHNOLOGIES, INC., | Case No. 1:21-cv-09500-PKC |
| Plaintiff/Counterclaim-Defendant, | Hon. P. Kevin Castel |
| *-against-* | |
| BILT, INC., | |
| Defendant/Counterclaim-Plaintiff. | |

## BILT TECHNOLOGIES, INC.'S AND BILT, INC.'S
## <u>JOINT PROPOSED JURY INSTRUCTIONS</u>[1]

---

[1] For the reasons discussed in the Joint Pre-Trial Order, Defendant/Counterclaim-Plaintiff BILT, Inc. submits that Plaintiff/Counterclaim-Defendant should be referred to by its actual name, Bilt Technologies, Inc. or Bilt Tech., not "Bilt Rewards", and Bilt Technologies, Inc. submits that the parties should use the name that most accurately represents how each presents itself to the consuming public and accordingly, Bilt Technologies, Inc. should be referred to as "Bilt Rewards," the name it commonly uses to market itself.

## TABLE OF CONTENTS

**Page**

I.   Pre-Trial Jury Instructions ................................................................................... 1

II.  Post-Trial Jury Instructions ................................................................................ 22

III. Substantive Law & Damages ............................................................................. 37

*EXHIBIT G*

## I.    <u>Pre-Trial Jury Instructions</u>

<u>JURY INSTRUCTION NO. 1</u>

<u>Nature of the Case</u>

Members of the jury, we are set to begin the trial of the case about which you have heard some details during the process of jury selection.  Before the trial begins, however, there are certain instructions you should have so that you will have a better understanding of what will be presented before you and how you should conduct yourself during the trial.

You will sometimes hear me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

The parties to this lawsuit are Bilt Technologies, Inc. and Bilt Inc. The party that brings the lawsuit is called the "Plaintiff" and the party against whom the suit is brought is called the "Defendant." In this action, each party has asserted trademark infringement and related claims against the other party. Therefore, each party is a "Plaintiff" as to its respective claims, and each party is a "Defendant" in its defense of the other party's claims. Each party is the "claimant" for each of their individual claims against the other party.

**Authority:** Adapted from *E.J. Brooks Co. v. Cambridge Security Seals*, No. 1-12-cv-02937 (S.D.N.Y. Apr. 12, 2012) (ECF No. 299).

JURY INSTRUCTION NO. 2

Order of Trial

The case will proceed as follows:

First, the lawyers for each side may make opening statements. An opening statement is not evidence; it is simply an outline to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

The Plaintiff will then present evidence in support of its claims and the attorneys for the Defendant may cross-examine the Plaintiff's witnesses. At the conclusion of the Plaintiff's case, the Defendant may introduce evidence and the Plaintiff's lawyers may cross-examine the Defendant's witnesses. The Defendant is not required to introduce any evidence or to call any witnesses. If, however, the Defendant does introduce evidence, the Plaintiff may present rebuttal evidence.

After the evidence is presented, the lawyers for each side will make closing arguments explaining what they believe the evidence has shown. A closing argument also is not evidence.

At the conclusion of the trial, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* §101:02 (6th ed. 2014).

<u>JURY INSTRUCTION NO. 3</u>

<u>Province of the Jury and Jury</u>

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts, unless I direct you that a fact has been established for purposes of this case, in which event you must accept it as true. You are required to accept the law as I instruct you, whether or not you agree with it.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* §101.10 (6th ed. 2014).

*EXHIBIT G*

JURY INSTRUCTION NO. 4

Jury Conduct

Before we start the trial, let me give you a few "rules of the road."

First, please do not discuss the case with anyone.  This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any Internet chat room, social media platform, website or other feature.  If you have to tell someone such as your spouse or your employer that you are serving on a jury and that the trial may last as late as [DATE], that is okay.  But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the judge not to discuss the case. The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who hasn't heard the evidence may think about the case.  If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the judge not to discuss the matter, and you should report the contact to the court as soon as possible.

Along the same lines, you should not try to access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the Internet.  And in the unlikely event you see anything in the media about this case, please turn away and pay it no heed.  Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations.  The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.

4

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 71.15 (2022).

JURY INSTRUCTION NO. 5

Evidence in the Case

When I say "admitted into evidence" or "received into evidence," I mean that this particular statement or particular exhibit may be considered by you in making the decisions you must make at the end of the case.  The evidence in the case will consist of the following:

1. The sworn testimony of any witnesses, including testimony in the form of a deposition;

2. The exhibits that are received in evidence;

3. Any facts that the parties have agreed to, called stipulated facts, which must be accepted as true; and

4. Any facts I tell you have been established, which also must be accepted as true.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* §§ 101.40, 103.34 (6th ed. 2014).

JURY INSTRUCTION NO. 6

What Is and Is Not Evidence

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are the evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that the assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not be permitted to consider as true the assumed fact that he had ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 74.01 (2022).

JURY INSTRUCTION NO. 7

Burden of Proof

The party with the burden of proof on any given issue has the burden of proving every disputed element of its claim to you by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish its claim by a preponderance of the evidence, you must decide against them on the issue you are considering.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that is equally probable that one side is right as it is the other side is right – then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence – he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof – that what the party claims is more likely true than not true – then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

    **Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions – Civil* §

73.01 (2022).

JURY INSTRUCTION NO. 8

Direct and Circumstantial Evidence

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence.  This is evidence which tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day.  Assume that the courtroom blinds were drawn, and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on (e.g., a preponderance of) all the evidence presented.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 74.02 (2022).

JURY INSTRUCTION NO. 9

Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit may be received into evidence. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means the evidence is stricken from the record and you cannot consider it.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* § 101:49 (6th ed. 2014).

JURY INSTRUCTION NO. 10

Comments on the Evidence

It is your role to determine the facts. I have not formed any opinion about the facts of this case, and you should not be concerned about or speculate over what my opinion would be if I were to form mine. If I say or do anything that leads you to suspect that I have any opinions about the facts in this case, you are instructed to disregard it. You may not draw any inference from a question to which I sustain an objection.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 71.01 (2014).

*EXHIBIT G*

JURY INSTRUCTION NO. 11

Judge's Questions to Witnesses

During the trial, I may sometimes ask a witness questions.  Please do not assume from any of my questions that I have any opinion about the subject matter of my questions or about any answers a witness gives.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* § 101.30 (6th ed. 2014).

*EXHIBIT G*

JURY INSTRUCTION NO. 12

Questions by Jurors Prohibited

I do not permit jurors to ask questions of witnesses or of the lawyers.  Please do not interrupt the lawyers during their examination of witnesses.

If you are unable to hear a witness or a lawyer, please raise your hand immediately and I will address your concern.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* § 101.18 (6th ed. 2014).

<u>JURY INSTRUCTION NO. 13</u>

<u>Judicial Notice & Stipulations</u>

I have taken judicial notice of certain facts which are not subject to reasonable dispute.  I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true.  You are required to accept these facts as true in reaching your verdict.

A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given that testimony.  However, it is for you to determine the effect, if any, to be given that testimony.

The stipulated facts are as follows:

[Read the stipulations.]

**Authority:**  Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 74.02 (2022).

JURY INSTRUCTION NO. 14

Note Taking Permitted

We are going to give you notepads so you can take notes during the trial. One juror's notes are not entitled to greater weight than another juror's recollection. It is the juror's recollections that control, but you may find it useful to take notes and you'll be welcomed to do that.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 215).

JURY INSTRUCTION NO. 15

Bench Conferences

From time to time it may be necessary for me to talk to the lawyers out of your hearing. The purpose of these conferences is to decide how certain matters are to be treated under the rules of evidence. The lawyers and I will do what we can to limit the number and length of these conferences.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case, or any issue, or of what your verdict should be.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* § 101.31 (6th ed. 2014).

JURY INSTRUCTION NO. 16

Cautionary Instruction Before Court Recess

We are about to take our first recess.  I want to remind you of the instructions I gave you earlier.  Until this trial is over, you are not to discuss this case with anyone, including other jurors, members of your family, people involved in the trial, or anyone else.  You may not permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Do not read or listen to any news reports of the trial.  If a newspaper headline or news broadcast catches your attention, do not examine the article or watch or listen to the broadcast any further.  The person who wrote or is reporting the story may not have listened to all the testimony, may be getting information from persons whom you will not see here in court under oath and subject to cross examination.  The report may emphasize an unimportant point or may simply be wrong.  You must base your verdict solely and exclusively on the evidence received in court during the trial.

The same holds true for information you may learn through the internet.  What is said on the internet may or may not be true, and information you learn outside of the courtroom cannot be allowed to influence your decision in this case in any way.  It is vital to our system of justice that decisions in a case be made based only upon the facts that are presented in the courtroom.  I am instructing you not to do any internet searches or other independent research on this case, the parties, or anything related to this case.

Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the clerk to give to me.

**Authority:** Adapted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* § 102.01 (6th ed. 2014).

**II.**    **Post-Trial Jury Instructions**

<u>JURY INSTRUCTION NO. 17</u>

<u>Function of the Court, the Jury, and Counsel</u>

Ladies and gentlemen, before you begin your deliberations, I am now going to instruct you on the law.  You must pay close attention and I will be as clear as possible.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified.  Your interest never flagged, and you have followed the testimony with close attention.

I ask that you give me that same careful attention as I instruct you on the law.

1.  <u>Role of the Court</u>

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than which I give you.

2. Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said – or what I may say in these instructions – about a fact or issue in evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings that I have made during the trial are not any indication of my views of what your decision should be as to whether or not the Plaintiff or the Defendant has proven their case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

*EXHIBIT G*

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* §§ 71.01-71.04 (2022).

24

JURY INSTRUCTION NO. 18

Witness Credibility

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called on to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, the witness's candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that in so deciding you should use your common sense, your good judgment, and your own life experience.

If you find that any witness has testified falsely with respect to a material fact in the case, you may, but you are not required to, disregard his entire testimony. Or, in your discretion, you may choose to follow that which you believe is true, and reject the balance. It is entirely within your discretion to weigh it, to determine the weight to be given to the testimony and to judge the credibility of the witness.

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 76.01 (2022).

JURY INSTRUCTION NO. 19

Effect of Inconsistent Statement or Conduct

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a trivial detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much weight, if any, to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 76.05 (2022).

JURY INSTRUCTION NO. 20

Expert Witnesses

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness called an expert witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the expert witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the expert witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

**Authority:**  Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 76.09 (2022).

JURY INSTRUCTION NO. 21

Interrogatories & Depositions [If Applicable]

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 74.07 (2022).

JURY INSTRUCTION NO. 22

Inferences

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 75.01 (2022).

*EXHIBIT G*

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 23

Presumptions

You have heard arguments by counsel which call on you to make certain presumptions.

What is a presumption?  A presumption requires you to find one fact from the existence of another fact.  In this case, for example, the law presumes that if one party has registered their trademark with the United States Patent and Trademark Office, that the trademark is valid and protectable, and that the registrant owns the mark with respect to the goods and services listed on the registration.

Before you may find the presumed fact to exist, you must, therefore, determine whether the underlying or basic fact (e.g., the registration) has been proved. Only if you find the basic fact to exist will the presumption operate to require you to find that the presumed fact (e.g., a valid and protectable trademark) also was proved.

One word of caution.  The mere existence of a presumption never shifts the burden of proof.  In this case, even if you find the basic fact that compels you to find the presumed fact, the burden of proof still remains on the claimant to prove all the elements of his claim. The presumptive fact, therefore, would only be a circumstance to be considered along with all of the other circumstances in this case in deciding the issue of liability.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 75.02 (2022); *Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2nd Cir 2004) ("The presumption of an exclusive right to use the mark extends only so far as the goods or services noted in the registration certificate.").

**Objection:** Bilt Inc. objects to this proposed instruction because it improperly conflates the issues of trademark ownership, protectability, and infringement. For example, Bilt Tech. makes the similarity of goods and services a legal prerequisite for a finding of ownership, protectability,

31

*EXHIBIT G*

and infringement, whereas the controlling legal authorities have "similarity of goods and services" as just one part of the 8-factor *Polaroid* infringement test. This issue is the subject of Bilt Inc.'s motion in limine regarding the classification of goods and services (ECF No. 75).

[BILT INC.'S PROPOSED] JURY INSTRUCTION NO. 23

Presumptions

You have heard arguments by counsel which call on you to make certain presumptions.

What is a presumption?  A presumption requires you to find one fact from the existence of another fact.  In this case, for example, the law presumes that if one party has registered their trademark with the United States Patent and Trademark Office, that the trademark is valid and protectable, and that the registrant owns the mark.

Before you may find the presumed fact to exist, you must, therefore, determine whether the underlying or basic fact (e.g., the registration) has been proved. Only if you find the basic fact to exist will the presumption operate to require you to find that the presumed fact (e.g., a valid and protectable trademark) also was proved.

One word of caution.  The mere existence of a presumption never shifts the burden of proof.  In this case, even if you find the basic fact that compels you to find the presumed fact, the burden of proof still remains on the claimant to prove all the elements of his claim. The presumptive fact, therefore, would only be a circumstance to be considered along with all of the other circumstances in this case in deciding the issue of liability.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 75.02 (2022).

**Objection**: Bilt Rewards objects to this proposed instruction as incomplete and misleading because the definition of the presumption of a registered trademark omits that the presumption only extends so far as the goods or services noted in the registration certificate.  *Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2nd Cir 2004) ("The presumption of an exclusive right to use the mark extends only so far as the goods or services noted in the registration certificate.").

**Bilt Inc.'s Response to Bilt Tech.'s Objection:** The issues raised in Bilt Tech.'s objection are the subject of Bilt Inc.'s motion in limine regarding the classification of goods and services (ECF No. 75). In addition, Bilt Tech. is improperly conflating the issues of trademark ownership, protectability, and infringement. For example, Bilt Tech. makes the similarity of goods and services a legal prerequisite for a finding of ownership, protectability, and infringement, whereas the controlling legal authorities have "similarity of goods and services" as just one part of the 8-factor *Polaroid* infringement test.

JURY INSTRUCTION NO. 24

Summaries & Charts [If Applicable]

The plaintiff (or defendant) has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 74.06 (2022).

JURY INSTRUCTION NO. 25

Corporations and Corporate Responsibility

In this case, both parties are corporations.  The mere fact that the parties are corporations does not mean they are entitled to any less consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

When a corporation is involved, of course, it may act only through people as its employees; and in general, a corporation is responsible under the law for any of the facts or statements of its employees that are made within the scope of their duties as employees of the company.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 72.01 (2022); also adopted from 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions – Civil* §§ 103.12, 103:31 (6th ed. 2014).

III.     **Substantive Law & Damages**

JURY INSTRUCTION NO. 26

Liability in General

As I explained at the outset of this trial, this is a civil case in which Bilt Technologies, Inc., whom I will refer to as [Bilt Rewards] [Bilt Tech.], brought claims that Bilt, Inc., whom I will refer to as Bilt Inc., infringed [Bilt Rewards'] [Bilt Tech.'s] trademark rights in the mark "BILT," and committed unfair competition by intending to sell goods and services similar to those of [Bilt Rewards] [Bilt Tech.].  [Bilt Rewards] [Bilt Tech.] asserts the following trademark-related claims: unfair competition under a federal law known as the Lanham Act, unfair competition under the common law, and trademark infringement under the common law.

In response, Bilt Inc. denies these claims and asserts its own claims against [Bilt Rewards] [Bilt Tech.]. Bilt Inc. contends that [Bilt Rewards'] [Bilt Tech.'s] use of the mark "BILT" is confusingly similar to, and infringes upon, Bilt Inc.'s federally registered trademark. Bilt Inc. asserts the following trademark-related claims: trademark infringement under federal and common law, and unfair competition under federal and common law.

Each party will be referred to as the "claimant" for each of their individual claims.

I will instruct you on each of the essential elements that each party must prove, by a preponderance of the evidence, to prevail on a given claim. This is known as establishing "liability."  If you find that [Bilt Rewards] [Bilt Tech.] has proven by a preponderance of the evidence each essential element of a particular claim, then you should find Bilt Inc. liable on that claim.  In contrast, if you find that [Bilt Rewards] [Bilt Tech.] has not proven by a preponderance of the evidence every essential element of a particular claim, then you should find Bilt Inc. not liable.

As for Bilt Inc.'s claims, if you find that Bilt Inc. has proven by a preponderance of the evidence each essential element of a particular claim, then you should find [Bilt Rewards] [Bilt Tech.] liable on that claim.  In contrast, if you find that Bilt Inc. has not proven by a preponderance of the evidence every essential element of a particular claim, then you should find [Bilt Rewards] [Bilt Tech.] not liable.

**Authority**: Adapted from *Adidas America, Inc. v. Thom Browne, Inc.*, No. 1:21-cv-05615-JSR-RWL (ECF Nos. 117, 181); *Can't Live Without It, LLC v. ETS Express, Inc.*, No. 1:17-cv-03506-JSR (ECR No. 128); and *4 Pillar Dynasty LLC v. New York & Co.*, No. 1:16-cv-02823-JSR (ECF No. 33).

*EXHIBIT G*

<u>[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 27</u>

<u>Trademark Defined</u>

The term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by a manufacturer or merchant to identify his goods and to distinguish them from those manufactured or sold by others.  A trademark may also be referred to as a "mark."

The function of a trademark is to distinguish and identify goods or services as the goods of a particular manufacturer or merchant and to protect its goodwill against the sale of another's goods as its own.  In other words, trademarks serve to indicate the source of the good or service. The owner of a trademark has the right to exclude others from using its trademark or a similar mark that is likely to cause confusion in the marketplace.

 Likewise, prior use of a mark with certain goods and services cannot prevent others from using the mark with unrelated goods and services.  This is because trademark protection only applies to the same or similar goods and services.  For example, Delta Air Lines and Delta Faucet both use the mark DELTA.  Because Delta Air Lines and Delta Faucet use the mark with unrelated goods and services, they can both have valid, protectable marks without a likelihood of confusion. Another example of two co-existing marks for dissimilar goods and services is Dove Chocolate and Dove soap.  Though both goods share the same "Dove" name, both are registered trademarks owned by different companies.  Similarly, Yale locks and Yale University share no similarity in goods and services, and each own a valid, protectable right to use the Yale mark.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 86A.01 (2022); also adapted from *Adidas America, Inc. v. Thom Browne, Inc.*, No. 1:21-cv-05615-JSR-RWL (ECF Nos. 117, 181); *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.); *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1541 (2d Cir. 1992).

**Objection:** Bilt Inc. objects to this proposed instruction because it is biased and confusing. Bilt Tech. includes an entire paragraph favorable to its position (with three examples allegedly helpful to Bilt Tech. involving "Delta," "Yale," and "Dove") without any counterbalancing examples favorable to Bilt Inc. Accordingly, the Court should adopt the more balanced and understandable instruction proposed by Bilt Inc. below, which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221).

[BILT INC.'S PROPOSED] JURY INSTRUCTION NO. 27

<u>Trademark Defined</u>

A trademark is a word, symbol, or combination of words and symbols used by a person or entity to identify products, to distinguish its products from those manufactured or sold by others, and to indicate the source of its product. The main purpose of a trademark is to identify and distinguish goods and services as the product of a particular manufacturer or merchant, and to allow a trademark owner to protect its goodwill and control its reputation. A person who uses the trademark of another without authorization may be liable for trademark infringement and for damages.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221).

**Objection:** Bilt Rewards objects to this proposed instruction because it is incomplete and misleading without the instruction that trademark protections are limited to the scope of goods and services in connection with which the trademark is used. *MetLIfe, Inc. v. Metropolitan Nat. Bank*, 388 F.Supp.2d 223, 229 (S.D.N.Y. 2005) ("The strength of a mark refers to its distinctiveness, that is to say, the mark's ability to identify goods sold under it as coming from one particular source."), quoting *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir.1998).

*EXHIBIT G*

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 28

Unfair Competition: False Designation of Origin

Each party to this litigation contends that the other party is liable for unfair competition under a federal law known as the Lanham Act. Specifically, each party asserts that the other party's use of the mark "Bilt" is a false designation of origin. To prove their false designation of origin claim, each party, or a claimant, must prove the following:

(1) the claimant has valid trademark rights in the Bilt mark;

(2) the claimant had established Bilt as a trademark through use in commerce before the other party began to market its goods and services in the area of commerce where the claimant sells its goods and service; and

(3) the other party adopted a use of a mark that was the same, or confusingly similar to the claimant's mark, such that consumers were likely to confuse the two.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 86A.05 (2022); WEST 15B Fed. Proc. Forms § 64:640.70.

**Objection:** Bilt Inc. objects to this proposed instruction as unnecessarily lengthening and complicating the jury instructions because a separate instruction for a federal unfair competition claim is superfluous where, as here, Bilt Inc. asserts a federal trademark infringement claim against Bilt Tech. Indeed, the same standard governing Bilt Inc.'s federal trademark infringement claim also governs the parties' respective federal unfair competition claims and common law trademark infringement claims. *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 649 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) ("To prevail on a trademark infringement, false designation of origin, or unfair competition claim under [the Lanham Act, 15 U.S.C. § 1125(a)], a plaintiff must show, first, that he or she has a valid mark that is entitled to

*EXHIBIT G*

protection, and, second, that the defendant's actions are likely to cause confusion as to the origin or sponsorship of the defendant's goods.") (citing *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 224 (2d Cir. 2012); *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir. 2003); *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 115 (2d Cir. 2001)). Thus, Bilt Inc.'s proposed "Trademark Infringement and Obtaining a Trademark" instruction below – which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221) – sets forth the legal standard for ***all*** of the parties' respective claims, including the parties' federal unfair competition claims described in this proposed instruction. Bilt Inc. also objects to Bilt Tech.'s requirement that the goods and services of the parties be identical as a legal prerequisite to a trademark infringement claim, which is directly contrary to controlling law.

*EXHIBIT G*

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 29

Obtaining a Trademark

To establish a claim of unfair competition, the claimant must first prove that it has a valid mark that is entitled to protection. A person acquires a trademark, and the right to exclude others from using the trademark, by being the first to use the trademark in the marketplace. Rights in a trademark are obtained only through commercial use of the trademark which is the use of the mark on or in connection with an actual good or service. A manufacturer or merchant may obtain trademark rights through actual use of any word, name, symbol or device or any combination thereof, to identify and distinguish its goods or services.

A manufacturer or merchant that has obtained trademark rights through use of any word, name, symbol or device or any combination thereof, to identify and distinguish its goods, may apply for and obtain a certificate of registration of the trademark issued by the United States Patent and Trademark Office. A certificate of registration of a trademark is evidence of the registrant's ownership of the trademark and of the registrant's exclusive right to use the trademark in connection with the goods and services specified in the certificate. In other words, the presumption of an exclusive right to use a registered mark extends only to the goods and services noted in a registration certificate.

However, registration of a trademark is not conclusive as to the validity of the trademark. You may also consider any evidence offered by Bilt Rewards that Bilt Inc.'s registered trademark is invalid. From such evidence, you are free to find that a registered trademark is not valid, in accordance with the instruction on the claims asserted by Bilt Rewards, if you find that the Bilt Rewards has proved by a preponderance of the evidence that Bilt Inc.'s the mark is invalid. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the registered trademark is invalid.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 86A.08 (2022); 15 U.S.C.A. §§ 1057(b), 1115(a), 1065; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003); *Physician's Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 82-83 n.1 (2d Cir. 1988); *Dwinell-Wright Co. v. White House Milk Co.*, 132 F.2d 822, 825 (2d Cir. 1943) (Hand, J.); *Phillips-Van Heusen Corp. v. Calvin Clothing Company, Inc.*, 444 F. Supp. 2d 250, 254 (S.D.N.Y. 2006); FJPI Section 159.30; also adapted from *Lucky Brand Dungarees v. Ally Apparel Resources*, No. 1-05-cv-06757 (S.D.N.Y. Jul. 27, 2005) (ECF No. 139).

**Objection:** Bilt Inc. objects to this proposed instruction because it is biased, incomplete, and misstates the law as to incontestable trademarks (such as Bilt Inc.'s registered trademark asserted in this action) under 15 U.S.C.§ 1115(b). For example, Bilt Tech. contends (incorrectly) that the jury "may . . . consider ***any*** evidence offered by Bilt [Tech.] that Bilt Inc.'s registered trademark is invalid." (Emphasis added.) However, the validity and protectability of Bilt Inc.'s incontestable mark can only be challenged by Bilt Tech. through the specific defenses enumerated in 15 U.S.C.§ 1115(b). The Court should adopt the more accurate, balanced, and understandable instruction proposed by Bilt Inc. below, which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221).

*EXHIBIT G*

[BILT INC.'S PROPOSED] JURY INSTRUCTION NO. 28

Trademark Infringement and Obtaining a Trademark

In order to prevail on a claim for trademark infringement and unfair competition under the Lanham Act, the claimant has the burden to establish by a preponderance of the evidence that:

(1) the claimant's claimed trademark is protectable; and

(2) there is a likelihood of confusion between the claimant's trademark and the other party's use of the same or substantially similar mark.

If you find that the claimant has proven these elements by a preponderance of the evidence, then you must find the other party liable for trademark infringement and unfair competition under the Lanham Act.

I previously instructed you that the claimant has the burden of proving by a preponderance of the evidence that it owns a valid and protectable trademark. A valid trademark is a word, name, symbol, device, or any combination of these that indicates the source of goods or services and distinguishes those goods or services from the goods or services of others. A trademark becomes protectable after it is used in commerce.

One way for the claimant to prove that a trademark is protectable is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibit __ is a certificate of registration from the United States Patent and Trademark Office. It was submitted by Bilt Inc. as proof of the validity of the trademark and that Bilt Inc. owns the trademark.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221); Model Civ. Jury Instr. 9th Cir. 15.6 & 15.8 (Revised Dec. 2020 & Sept. 2021, respectively); *Flat Rate Movers, Ltd. v. Flatrate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 379 (S.D.N.Y. 2015); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985); 15 U.S.C. § 1115(b).

**Objection:** Bilt Rewards objects to this proposed instruction because it is biased, misleading and misstates the law as to the incontestability of registered trademarks under 15 U.S.C.§ 1115(b).  Bilt Inc. claims that its trademark registration is "proof of the validity of the trademark and that Bilt Inc. owns the trademark."  However, the validity and protectability of Bilt Inc.'s mark is expressly limited to the goods or services specified on the registration.  *Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2nd Cir. 2004) ("The presumption of an exclusive right to use the mark extends only so far as the goods or services noted in the registration certificate."); *Caché, Inc. v. M.Z. Berger & Co*., No. 99-CIV-12320 (JGK), 2001 WL 38283, at *4 (S.D.N.Y. Jan 16, 2001) (rejecting registrant's entitlement to nationwide rights in connection with watches because "the presumption of an exclusive right to use a registered mark extends only to the goods and services noted in a registration certificate").  Bilt Inc.'s proposed instruction will mislead the jury into believing that its registration entitles Bilt Inc. to trademark protection over the mark "BILT" for any goods or services no matter how unrelated to the goods and services indicated on the registration.

**Bilt Inc.'s Response to Bilt Tech.'s Objection:** The issues raised in Bilt Tech.'s objection are the subject of Bilt Inc.'s motion in limine regarding the classification of goods and services (ECF No. 75). In addition, Bilt Tech. is improperly conflating the issues of trademark ownership,

protectability, and infringement. For example, Bilt Tech. makes the similarity of goods and services a legal prerequisite for a finding of ownership, protectability, and infringement, whereas the controlling legal authorities have "similarity of goods and services" as just one part of the 8-factor *Polaroid* infringement test.

*EXHIBIT G*

<u>[BILT INC.'S PROPOSED] JURY INSTRUCTION NO. 29</u>

<u>Forward Confusion vs. Reverse Confusion</u>

There are two theories of consumer confusion that support a claim of trademark infringement: forward confusion and reverse confusion. Forward confusion occurs when consumers are likely to believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder. By contrast, reverse confusion occurs when consumers dealing with the senior trademark holder are likely to believe that they are doing business with the junior trademark holder.

**Authority:** Adapted from Model Civ. Jury Instr. 9th Cir. 15.5, Commentary (Revised Sept. 2017); *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988) ("Under the Lanham Act confusion is ordinarily the misimpression that the senior user . . . is the source of the junior user's . . . goods. Reverse confusion is the misimpression that the junior user is the source of the senior user's goods. . . . Thus, reverse confusion also inhibits fair competition and deprives [the senior user] of its reputation and good will.").

**Objection**: Bilt Rewards objects to this proposed instruction as unnecessarily lengthening and complicating the jury instructions because a separate instruction reverse confusion is superfluous where the same set of factors are used in assessing infringement, whether it be forward or reverse confusion. *THOIP v. Walt Disney Co.* 788 F.Supp.2d 168, 177-78 (S.D.N.Y. 2011) ("In determining whether there is a likelihood of reverse confusion, courts within the Second Circuit apply the eight-factor balancing test set forth in *Polaroid Corporation v. Polarad Electronics Corporation*, just as they do to assess claims for forward confusion. The *Polaroid* factors are: (1) the strength of plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the proximity of the products; (4) the likelihood that plaintiff will "bridge the gap"; (5) actual confusion between products; (6) defendant's good or bad faith in adopting the mark; (7) the quality

49

of defendant's product; and (8) the sophistication of the buyers."). Further, the proposed instruction provides an incomplete and misleading definition of reverse confusion. An important element of reverse confusion is that the junior user has outgrown the senior user and saturated and overcome the market. It isn't simply that consumers mistaken the senior user's products as the junior user's. *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 485 (S.D.N.Y. 2004) ("Reverse confusion describes the phenomenon in which the junior user's advertising so greatly overshadows that of the senior user that consumers come to the mistaken conclusion that the junior user is in fact the source of the <u>senior user's</u> goods.") (internal citations and quotations omitted).

*EXHIBIT G*

<u>[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 30</u>

<u>Proof of a Valid Trademark</u>

In this case, each party claims it has established the term Bilt as a trademark for its goods and services. In determining whether the claimant has established the term Bilt as a trademark, the first question for you, the jury, to decide is whether the public recognizes the term Bilt in connection with the sale of the claimant's goods and services, distinguishing it from those sold by others.

You will consider whether the quantity and quality of the claimant's use of this term has established that party's priority so as to earn legal protection of the term as a trademark to the goods and services it provides.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* §§ 86A.10-86A.11 (2022); 3 Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions* § 98.03 (4th Ed.).

**Objection:** Bilt Inc. objects to this proposed instruction as unnecessarily lengthening and complicating the jury instructions because (1) the parties apparently agree that the term "Bilt" is inherently distinctive (and thus does not require a showing of public recognition or secondary meaning), and (2) Bilt Inc.'s proposed "Likelihood of Confusion" instruction below – which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221) – necessarily includes the legal concepts set forth in this proposed instruction in the "strength of mark" confusion factor.

**Bilt Rewards' Response to Bilt Inc.'s Objection**: Bilt Inc.'s objections misstates Bilt Rewards position. Bilt Rewards does not agree that the term "Bilt" is inherently distinctive.

*EXHIBIT G*

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 31

Priority of Use of Trademark

If you find that the public recognizes the claimant's use of Bilt as identifying its goods and distinguishing them from others, you must then consider whether the evidence shows the claimant had used the term Bilt as a trademark before the other party began to market its goods in the area where the claimant sells its goods. If you determine that the claimant has not established that it used Bilt in the area where it sells its goods before the other party's use of Bilt in the same area of commerce, then you must find for the other party, as there can be no trademark infringement.

If you find that "Bilt" is inherently distinctive, you must then consider whether the evidence shows that the claimant used Bilt as a trademark for its goods before the other party began to use Bilt to sell similar goods. That is, the claimant must have attached Bilt to its goods before the other party made such use of Bilt to goods similar to the claimant's goods. The date that either party conceived the idea of its symbol does not constitute use of the symbol.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* §§ 86A.23-86A.24 (2022).

**Objection:** Bilt Inc. objects to this proposed instruction as confusing, incomprehensible, and unnecessarily lengthening the jury instructions because (1) the parties apparently agree that the term "Bilt" is inherently distinctive (and thus does not require a showing of public recognition or secondary meaning), and (2) Bilt Inc.'s proposed "Likelihood of Confusion" instruction below – which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221) – necessarily includes the legal concepts set forth in this proposed instruction in the "strength of mark" confusion factor. Bilt Inc. also objects to this instruction as

being overly restrictive in repeatedly stating that the jury "must find" for one party or the other in various circumstances.

### [BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 32

### Likelihood of Confusion

If you determine that the claimant has demonstrated that it has a mark entitled to some protection, you must then determine whether the claimant has also shown a likelihood of confusion caused by both parties' use of the mark "Bilt" in connection with their respective goods and services.

Here, you may draw on your common experience as citizens of the community. In addition to the general knowledge, you have acquired throughout your lifetimes, you may also consider:

(1)    Strength of the Claimant's Mark;

(2)    Similarities Between the Parties' Marks;

(3)    Proximity in the Marketplace;

(4)    Likelihood that the Claimant will "Bridge the Gap";

(5)    Actual Confusion Between the Goods;

(6)    The Other Party's Intent in Adopting the Mark;

(7)    Quality of the Other Party's Goods; and

(8)    Sophistication of Buyers.

I will now discuss each of these factors in greater detail.

1. Strength of the Claimant's Mark

The strength of the claimant's mark is to be determined according to whether the claimant's mark is generic, descriptive, suggestive, or arbitrary. Strength or distinctiveness may be diluted by third-party use. In this connection, you may consider whether the claimant's name or similar names have been used by unrelated entities.

2. <u>Similarity Between the Parties' Marks</u>

Even close similarity between two marks is not dispositive of the issue of likelihood of confusion. Rather, similarity must be assessed in terms of its effect upon prospective purchasers, and based upon the factors which could reasonably be expected to have an impact on and be remembered by, a potential customer. In deciding whether the marks are similar *as used*, you must not look just at the typewritten and aural similarity of the marks, but how and where they are presented in the marketplace. When viewed in context, however, the parties' logos and differences in cover layouts, photos, and legends may also tend to differentiate the marks.

3. <u>Proximity in the Marketplace</u>

The focus of the proximity inquiry is the likelihood that customers may be confused as to the source of the goods, rather than as to the goods themselves. In considering the proximity of the goods, the question is whether the two goods compete with each other. You may consider evidence concerning all aspects of the goods, including price, style, intended uses, target clientele, typical distribution channels, and others.

4. <u>Likelihood That the Claimant Will "Bridge the Gap"</u>

Bridging the gap refers to the senior user's interest in preserving avenues of expansion and entering into fields related to its goods or services. This factor involves a determination of the likelihood that the claimant will enter the other party's business or of the average customer's perception that the claimant would enter the other party's business. A future intention to bridge the gap, however, must be more than merely speculative.

5.  Actual Confusion

Proof of actual confusion is not necessary to show trademark infringement (however, as I will later explain, either actual confusion or bad faith is a requirement for an award of damages or profits).  But proof of actual confusion is probative of a likelihood of confusion.  Likewise, the absence of evidence of actual confusion can be evidence that confusion is unlikely.

Under the Lanham Act, actual confusion means "consumer confusion that enables a seller to pass off his goods as the goods of another."  To show actual confusion, the claimant must demonstrate that the other party's use could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.  Evidence of actual confusion may include mis-directed phone calls and letters or may consist of consumer surveys. Either party's failure to introduce any survey evidence may be considered in deciding whether there was actual confusion and counts against a finding of actual confusion.

Importantly, trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.  Therefore, consumers' inquiries about the relationship between Bilt Rewards and Bilt Inc. without a mistaken purchasing decision do not amount to actual confusion.

6.  Good Faith in Adopting its Mark

Here the question is whether the claimant has shown that the other party adopted its mark with the intention of capitalizing on the claimant's reputation and goodwill.

7.  Quality of the Other Party's Goods

The analysis of the quality of the other party's goods is primarily concerned with whether the claimant's reputation could be jeopardized by virtue of the fact that the other party's goods or services are of inferior quality.

8.  <u>The Sophistication of Consumers of the Other Party's Services</u>

In considering the sophistication of consumers, the question looks at the general impression of the ordinary purchaser, buying under normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.

Where the likely consumers of the parties' goods or services are discriminating purchasers of expensive goods or services, confusion may be less likely. Conversely, if the goods or services are not expensive, consumers may purchase more indiscriminately, and confusion may be more likely. The greater the value of an article, the more careful the typical consumer may be expected to be in a purchasing decision; so, for example, the average purchaser of an automobile is likely to devote more attention to examining differences between the goods and determining their source than will the average purchaser of a ball of string. The characteristics of the parties' goods or services may also be used to determine sophistication of consumers. For example, consumers of health care goods that are ingested may be more careful in examining differences between goods and determining their source than consumers of household cleaning goods.

I have mentioned eight factors. They are not all the factors that may be considered. Further, no one factor or consideration is conclusive, but each should be weighed in light of all the evidence presented at trial. You must determine, in light of these considerations and your common experience, both whether a significant number of the ordinary consumers of such services as Bilt Inc. intends to provide – 3D assembly instructions and data analytics services and related financial services like providing warranty services – who are neither overly careless nor overly careful, would be likely to purchase them under mistaken belief that they come from Bilt Rewards, or that Bilt Rewards sponsors, approves or is otherwise affiliated with such services, or whether a significant number of the ordinary consumers of such services as Bilt Rewards intends to provide

*EXHIBIT G*

– a credit card and loyalty rewards program – who are neither overly careless nor overly careful, would be likely to purchase them under mistaken belief that they come from Bilt Inc., or that Bilt Inc. sponsors, approves or is otherwise affiliated with such services.

In light of these considerations and your common experience, you must determine if ordinary consumers, neither overly careful nor overly careless, would be confused as to the origin of Bilt Inc.'s financial services and consumer loyalty program upon encountering the mark "Bilt" as the respective parties have used such terms in connection with their goods and services.

**Authority:**  Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 86A.16 (2022); also adapted from *Car Freshner Corp. v. D&J Distrib.*, No. 1-14-cv-00391 (S.D.N.Y. Jan. 22, 2014) (ECF No. 77); *Lang v. Retirement Living Pub. Co. Inc.*, 949 F.2d 576, 583 (2d Cir. 1991); *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16 Civ. 1267 (AT)(SN), 2018 WL 3407709, at *10 (S.D.N.Y. Jan. 12, 2018); *Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 22-CV-5772 (LJL), 2022 WL 17733156, at *42 (S.D.N.Y. Dec. 7, 2022).

**Objection:**  Bilt Inc. objects to this proposed instruction because it contains legal instructions that are rejected under controlling law. For example, Bilt Tech. states (incorrectly) in this proposed instruction that "either actual confusion or bad faith is a requirement for an award of damages or profits." The Supreme Court's recent decision in *Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492 (2020), however, directly held that a plaintiff in a trademark infringement suit is not required to show that a defendant willfully infringed the plaintiff's trademark as a precondition to a profits award under 15 U.S.C. § 1117(a). *Id*. at 1493 (vacating Second Circuit decision and resolving split among the circuit courts). *See also RVC Floor Décor, Ltd. v. Floor & Décor Outlets of Am., Inc*., 527 F. Supp. 3d 305, 331 (E.D.N.Y. 2021) (citing the

Supreme Court's *Romag Fasteners* decision, holding that a plaintiff need not show a defendant's willful infringement "to win an award of Defendant's profits") ("***The Supreme Court recently decided in Romag Fasteners that disgorgement of profits is available under the Lanham Act <u>regardless of willfulness</u>***.") (emphasis added). Likewise, it is well established in the Second Circuit that a claimant "need not establish actual consumer confusion to recover [an infringer's] profits under the Lanham Act." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 211-13 (2d Cir. 2019) ("[W]e have repeatedly affirmed since *George Basch* [*Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992)] that a demonstration of actual confusion is not a prerequisite to a profits award.") (collecting cases). Further, Bilt Inc. objects to this proposed instruction because it is biased and could lead to jury confusion. Bilt Inc. submits that its proposed "Likelihood of Confusion" instruction below – which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221) – is balanced and neutral with respect to each party's respective claims against the other party.

*EXHIBIT G*

<u>[BILT INC.'S PROPOSED] JURY INSTRUCTION NO. 32</u>

<u>Likelihood of Confusion</u>

The claimant has the burden of proving by a preponderance of the evidence that an appreciable number of ordinarily prudent consumers are likely to be confused, mistaken, or deceived that the other party or its products or services originate from or are approved by or are associated or affiliated in some way with the claimant or its products or services.

In determining whether there is or will be a likelihood of consumer confusion caused by the party's use of its allegedly infringing mark, you may consider the various factors that I will now explain to you. No single one of these factors disposes of whether there is a likelihood of confusion and the claimant does not need to prevail upon each individual factor or a majority of factors in order for you to conclude that they have met their burden of establishing that there is a likelihood of confusion. Rather, you may accord whatever weight you deem appropriate to the factors in determining the ultimate question of whether there is a likelihood of confusion.

So that's what you're deciding on this element, likelihood of confusion. The factors I'm going to lay out are things you should think about in deciding that question. The likelihood of confusion factors that you may consider include:

(1)    Strength of the Claimant's Mark;

(2)    Similarities Between the Parties' Marks;

(3)    Similarity of the Goods or Services that the Marks Identify;

(4)    Product Line Expansion/Bridging the Gap;

(5)    Actual Confusion;

(6)    The Other Party's Intent in Adopting the Mark;

(7)    Quality of the Other Party's Goods or Services; and

(8)    Sophistication of Buyers.

I will now discuss each of these factors in greater detail.

1.     <u>Strength of the Claimant's Mark</u>

The first factor in considering the likelihood of consumer confusion is the strength of the claimant's trademark. The more the consuming public recognizes the claimant's trademark as an indication of origin of the claimant's goods or services, the more likely it is that consumers would be confused about the source of the party's goods or services if the other party uses a similar design.

There are two aspects to this inquiry. The first part of the inquiry focuses on the distinctiveness of the claimant's trademark. The stronger and more distinctive the trademark, the more protection it receives. Inherently distinctive trademarks, trademarks whose intrinsic nature serves to identify a particular source of a product, are considered strong. The inherent distinctiveness of a mark can fall into one of four categories listed here in decreasing order of strength with the strongest category first.

*One*. Arbitrary marks: Marks that in no way describe or suggest the nature of the goods or services they are used with. For example, the word "Apple," where the products are computers and smart phones, is an example of an arbitrary mark.

*Second* is suggestive marks. That's a mark that suggests some characteristic or quality of the goods of services with which they are used.

*Third*, in descending order, is descriptive marks, marks that directly describe some characteristic or quality of the goods or services with which they are used in the straightforward way that requires no exercise of imagination.

*Fourth*, there are generic marks, marks that directly describe a product in its entirety. For example, the word "apple" where the products are apples. It's totally generic. The further away a mark is from the definition of the goods and services being sold, the stronger it is.

The second part of the inquiry focuses on whether the mark has acquired secondary meaning. A mark acquires secondary meaning when it has been used in such a way that its primary significance in the minds of consumers is to identify the product source, regardless of whether consumers know who or what the source is. It is sufficient if consumers identify the claimant's mark with a single source, even if they don't know the name of that source.

In addition, the claimant does not need to show that all consumers or even a majority associate the claimant's mark with a single source. They need only show that a substantial segment of consumers make this connection.

When you are determining whether the claimant's mark has acquired secondary meaning, you should consider the following factors:

*One*. The length and exclusivity of use. You should consider how long the claimant has been using its mark and whether such use was exclusive.

*Two*. You should consider attempts to copy the mark. You should consider evidence of intentional copying of a mark, which can constitute persuasive evidence of consumer recognition of a mark as signifying the source of the product or service. Evidence that a competitor intentionally copied a mark supports a finding of secondary meaning where the circumstances of copying indicate an intent to benefit from the goodwill of the owner of the mark through consumer confusion.

*Three*. You can consider the sales success, if any, of the claimant's products or services bearing the claimant's mark.

*Four*. You should consider the claimant's advertising or promotional expenditures directed to the marketing and promotion of their products or services bearing the claimant's mark.

*Five*. You should consider whether consumer studies or surveys show that the claimant's mark is associated with a single source; and

*Six*. You should consider any unsolicited media coverage of the claimant's products or services bearing the claimant's mark.

The presence or absence of any particular factor should not necessarily resolve whether the mark has acquired secondary meaning. Rather, you should weigh the evidence based on the facts of the case as a whole.

2.    <u>Similarities Between the Parties' Marks</u>

You should next consider the degree of similarity between the claimant's trademark and the other party's mark. You should assess the overall impression on a consumer, considering the context in which the trademark is displayed to consumers and the totality of factors that could cause confusion among prospective purchasers.

In assessing these similarities, the test is not whether they can be differentiated when compared side-by-side, but rather whether they create a similar overall impression such that a consumer who has seen the claimant's trademark would upon later seeing the other party's mark be confused.

3.    <u>Similarity of the Goods or Services that the Marks Identify</u>

The next factor considers whether the claimant and the other party use their designs on the same or related kinds of goods or services. If the claimant and the other party use their designs on the same, related, or complementary kinds of goods or services – or goods or services that compete

with one another in the same or in an overlapping market – there may be a greater likelihood of confusion about the source of the goods or services than otherwise.

### 4. Product Line Expansion/Bridging the Gap

Even if the parties' products or services differ, you may consider how likely the claimant is to begin selling the products or services from which the other party is using the claimant's trademark. If there is a strong possibility of expanding into the other party's market, there may be a greater likelihood of confusion.

### 5. Actual Confusion

The next factor considers whether there is any evidence that consumers have actually been confused regarding the source of the other party's products or services. If the other party's conduct has led to instances of actual confusion, this circumstance strongly suggests a likelihood of confusion. However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the other party's conduct may still be likely to cause confusion. The law recognizes that actual confusion is very difficult to prove and thus only requires a likelihood of confusion.

You should also weigh any instances of actual confusion against the opportunities for such confusion. There may have been relatively few opportunities for actual confusion to occur, such as where the other party's sales of its products or services have been minimal or it has only been selling its products or services for a short period of time.

### 6. The Other Party's Intent in Adopting the Mark

You may also consider whether the other party adopted its allegedly infringing mark to capitalize on either the reputation and goodwill of the claimant's products or services or any confusion between the name of the claimant's and the other party's products or services.

Bad faith may be inferred from the other party's actual or constructive knowledge of the claimant's trademark. A party is deemed to have constructive knowledge of information that the party would have learned had it made an inquiry as would have been reasonable to expect the party to make under the circumstances.

A finding that the other party acted in bad faith is significant evidence of likelihood of confusion. However, even in the absence of proof that the other party acted knowingly, the use of the claimant's trademark to identify similar goods or services may indicate a likelihood of confusion.

7.      Quality of the Other Party's Goods or Services

You may consider the difference, if any, in quality between the claimant's products or services and the other party's products or services. If you conclude by a preponderance of the evidence that the other party's products or services are of lower quality than the claimant's products or services, then you may infer that a product of lower quality may adversely affect the claimant's reputation and goodwill symbolized by the claimant's trademark.

8.      Sophistication of Buyers

You may consider the sophistication and level of attention and care of an ordinary consumer purchasing the parties' products or services under normal conditions in the market and giving the attention such a purchaser would usually give in buying such products or services. When products or services are relatively inexpensive, the risk of likelihood of confusion is increased because purchasers of such products or services are likely to exercise a lesser degree of purchasing care and thus are more prone to confusion or mistake. When products or services are more expensive, the risk of likelihood of confusion is decreased because purchasers will be more careful and attentive.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221); *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d. Cir. 1961); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979); *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993); *Charles of the Ritz Grp. Ltd v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987); *Museum of Mod. Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 378 (S.D.N.Y. 2018); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 338 (S.D.N.Y. 2010); *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 204-05 (1985).

**Objection:** Bilt Rewards objects to this proposed instruction as incomplete and misleading because the definition of actual confusion omits controlling precent that will allow Bilt Inc. to confuse jurors and cause them to consider irrelevant evidence as actual confusion, which requires confusion that results in a purchasing decision. *Lang v. Retirement Living Pub. Co. Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) ("At any rate, no evidence links the confusion evinced by the calls to any potential or actual effect on consumers' purchasing decisions."); *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16 Civ. 1267 (AT)(SN), 2018 WL 3407709, at *10 (S.D.N.Y. Jan. 12, 2018) ("The Court finds that these examples do not constitute actual confusion because there is no evidence that they involve confusion about purchasing decisions, or any confusion about the source or affiliation of the products. Rather, it appears viewers of Defendant's channel are likely being careless and reaching the wrong email address, phone number, or social media

account.") (internal quotations and citations omitted); *see also Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 22-CV-5772 (LJL), 2022 WL 17733156, at *42 (S.D.N.Y. Dec. 7, 2022).

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 32

Common Law Unfair Competition

Both parties also assert an unfair competition claim under New York State common law against the other party.  It has the same standards as the federal law unfair competition claim, with one additional requirement.  In order to find that the other party has unfairly competed with the claimant under New York State common law, you must first find that the other party unfairly competed with the claimant under the federal unfair competition law.  You must also find that the other party acted with bad faith.

To find that the other party acted in bad faith, you must find that it acted with the intent to deceive or confuse consumers into thinking that its goods and services came from the same source as the claimant's goods and services.

If the claimant proves federal unfair competition and bad faith, you must find the other party liable on the common law unfair competition claim; otherwise, you must find the other party not liable.

**Authority:** Adapted from *adidas America, Inc. v. Thom Browne*, No. 1:21-cv-05615 (ECF Nos. 177, 181); *Deere & Co. v. MTD Holdings Inc.*, 2004 WL 324890, at *18 (S.D.N.Y. Feb. 19, 2004); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995); *Hi-Tech Pharmacal Co., Inc. v. Hi-Tech Pharmaceuticals, Inc.*, 2007 WL 1988737, at *11 (E.D.N.Y. Jul. 5, 2007); also adapted from *Lucky Brand Dungarees v. Ally Apparel Resources*, No. 1-05-cv-06757 (S.D.N.Y. Jul. 27, 2005) (ECF No. 139).

*EXHIBIT G*

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 33

Common Law Trademark Infringement

Both Bilt Rewards and Bilt Inc. have brought a claim of common law trademark infringement against the other party. If you decide that either party has established a trademark for its goods and services, then you must consider whether the other party infringed that trademark by its use of a similar mark in connection with the advertising and sale of its goods and services. The standard for trademark infringement under the common law is the same as unfair competition under the federal law. There is no requirement of "bad faith" like that of the unfair competition claim under the common law.

If you find by a preponderance of the evidence that Bilt Inc. is liable for unfair competition under federal law, then you must also find that Bilt Inc. infringed Bilt Rewards' trademark under the common law.

If you find by a preponderance of the evidence that Bilt Rewards is liable for unfair competition under federal law, then you must also find that Bilt Rewards infringed Bilt Inc.'s trademark under the common law.

**Authority:** Adapted from *Lucky Brand Dungarees v. Ally Apparel Resources*, No. 1-05-cv-06757 (S.D.N.Y. Jul. 27, 2005) (ECF No. 139); *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 359 n. 18 (S.D.N.Y. 1998).

**Objection:** Bilt Inc. objects to this proposed instruction as unnecessarily lengthening and complicating the jury instructions because a separate instruction for a common law trademark infringement claim is superfluous where, as here, the parties assert federal Lanham Act claims. (*See* ECF No. 221 at Page 34 of 70, *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-

*EXHIBIT G*

06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (stating, from a liability standpoint, "if you [the jury] have found for the plaintiff on the federal Lanham Act claim, then you have also found for plaintiff on trademark infringement and unfair competition under New York law. So you don't have to consider that. The determination on the one controls the determination under New York law. . . .").) *See also LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 649 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017). Thus, Bilt Inc.'s proposed "Trademark Infringement and Obtaining a Trademark" instruction above – which instruction Bilt Inc. has adapted from the trademark infringement case before this Court in *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221) – sets forth the legal standard for ***all*** of the parties' respective claims, including the parties' common law trademark infringement claims described in this proposed instruction.

JURY INSTRUCTION NO. 34

Willful Infringement

In the event you determine that the claimant has proven by a preponderance of the evidence that the other party has violated the Lanham Act in one of the ways that I've outlined, then you must consider whether the other party's violation was willful. A party is willful if that party was actually aware of its infringing activity or its actions were the result of reckless disregard or willful blindness.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221); *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 209-10 (2d. Cir. 2019).

JURY INSTRUCTION NO. 35

Damages – General Instructions

In the event that you determine that the claimant has proven by a preponderance of the evidence that the other party violated the Lanham Act in one of the ways that I've outlined, then you must consider whether the claimant is entitled to an award of damages for the offending party's wrongful conduct.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221).

*EXHIBIT G*

[BILT INC.'S PROPOSED] JURY INSTRUCTION NO. 36

Damages – Recovery of Profits

Under the Lanham Act, the claimant may be entitled to damages in the form of profits earned by the offending party from the sale of its products or services that are attributable to the infringement.

If you determine that an award of the offending party's profits is appropriate, profit is determined by deducting expenses from gross revenue. The claimant has the burden of proving by a preponderance of the evidence the amount of the offending party's gross revenues from its sale of products or services bearing the infringing mark.

Expenses are operating and production costs incurred in producing the gross revenue. The offending party has the burden of proving by a preponderance of the evidence any costs or expenses to be deducted from its gross revenue. Also, the offending party must demonstrate a sufficient connection between each claimed overhead expense and the sale of infringing products or services in order to deduct the expense from its gross revenues for infringing sales. An item of overhead may be deducted if, but only if, you find that the entirety of the overhead expense is attributable to the infringing products or services. If the offending party fails to establish any expense by a preponderance of the evidence, you should not deduct that expense from the gross revenues.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221); 15 U.S.C. § 1117(a).

[BILT REWARDS' PROPOSED] JURY INSTRUCTION NO. 36

Damages – Recovery of Profits

Under the Lanham Act, the claimant may be entitled to damages in the form of profits earned by the offending party from the sale of its products or services that are attributable to the infringement. actual confusion or willful infringement may be considered, but is not required, in determining damages in the form of profits.  You may consider the offending party's mental stated in additional to other factors, including (1) the degree of certainty that the offending party benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular offending party in effectuating the infringement; (4) any delay by the claimant; and (5) claimant's clean (or unclean) hands.

If you determine that an award of the offending party's profits is appropriate, profit is determined by deducting expenses from gross revenue. The claimant has the burden of proving by a preponderance of the evidence the amount of the offending party's gross revenues from its sale of products or services bearing the infringing mark.

Expenses are operating and production costs incurred in producing the gross revenue. The offending party has the burden of proving by a preponderance of the evidence any costs or expenses to be deducted from its gross revenue. Also, the offending party must demonstrate a sufficient connection between each claimed overhead expense and the sale of infringing products or services in order to deduct the expense from its gross revenues for infringing sales. An item of overhead may be deducted if, but only if, you find that the entirety of the overhead expense is attributable to the infringing products or services. If the offending party fails to establish any expense by a preponderance of the evidence, you should not deduct that expense from the gross revenues.

*EXHIBIT G*

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221); *Fashion Exch. v. Hybrid Promotions*, No. 14-CV-1254 (SHS), 2023 WL 375222, at *5-6 (S.D.N.Y. Jan. 24, 2023).

**Objection:** Bilt Inc. objects to this proposed instruction because it is unsupported and misstates the controlling law. For example, Bilt Tech. initially stated (incorrectly) that the "claimant is only entitled to damages in the form of profits if there has been actual confusion or the offending party willfully infringed on the claimant's trademark." The Supreme Court's recent decision in *Romag Fasteners, Inc v. Fossil, Inc.*, 206 L. Ed. 2d 672, 140 S. Ct. 1492 (2020), however, directly held that a plaintiff in a trademark infringement suit is not required to show that a defendant willfully infringed the plaintiff's trademark as a precondition to a profits award under 15 U.S.C. § 1117(a). *Id.* at 1493 (vacating Second Circuit decision and resolving split among the circuit courts). *See also RVC Floor Décor, Ltd. v. Floor & Décor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 331 (E.D.N.Y. 2021) ("***The Supreme Court recently decided in Romag Fasteners that disgorgement of profits is available under the Lanham Act <u>regardless of willfulness</u>***.") (emphasis added). Likewise, Bilt Tech.'s proposed instruction continues to maintain (incorrectly) that actual confusion may be considered in determining damages in the form of profits. However, it is well established in the Second Circuit that a claimant "need not establish actual consumer confusion to recover [an infringer's] profits under the Lanham Act." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 211-13 (2d Cir. 2019) ("[W]e have repeatedly affirmed since *George Basch* [*Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992)] that a demonstration of actual confusion is not a prerequisite to a profits award.") (collecting cases). Bilt Tech.'s "other factors" find no support in any controlling authority and are inapplicable to the present case.

75

<u>JURY INSTRUCTION NO. 37</u>

<u>Damages – Unfair Competition Under New York Common Law</u>

If you have found for the claimant on its New York common law unfair competition claim, you may consider whether to award punitive damages.

You may, but you are not required to, award punitive damages for the claimant's New York common law unfair competition claim if you conclude by clear and convincing evidence that the offending party's conduct has constituted gross, wanton, or willful fraud or other extremely unethical conduct. The clear and convincing evidence standard is a higher standard of proof than the previously-instructed preponderance of the evidence standard.

The purpose of punitive damages is not to compensate the claimant, but to punish the offending party for its gross, wanton, or willful acts. An act is wanton when it demonstrates conscious indifference and other disregard for its effect on the rights of others.

If you find that the offending party's conduct did not constitute gross, wanton, or willful fraud or other extremely unethical conduct, you need not proceed further in your deliberation on this issue and you should not award the claimant punitive damages. On the other hand, if you find by clear and convincing evidence that the offending party has engaged in such conduct, then you may determine such amount as you agree is proper and will serve to punish the offending party and to discourage the offending party from engaging in this type of conduct in the future.

If you decide to award punitive damages, the amount of punitive damages awarded should reflect the reprehensibility of the offending party's conduct. You should consider whether the offending party's conduct demonstrated an indifference to or reckless disregard for the rights of the claimant, whether the conduct was done with a bad faith motive or vindictiveness, whether the conduct constituted outrageous or oppressive intentional misconduct, the offending party's

awareness of the harm the conduct caused or was likely to cause, any concealment of the wrongdoing, and how often the offending party engaged in similar conduct in the past.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by the claimant and to the compensatory damages you awarded the claimant. The reprehensibility of the offending party's conduct is an important factor in deciding the amount that would be reasonable and proportionate in view of the harm suffered by the claimant and the compensatory damages you have awarded the claimant. You may also consider the offending party's financial condition in determining the amount of punitive damages to award.

In reporting your verdict, you will state specifically the amount of punitive damages awarded, if any.

**Authority:** Adapted from *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221); *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19-CV-6239 (PKC), 2022 WL 13848274, at *8 (S.D.N.Y. Oct. 24, 2022) ("[T]here is no dispute that punitive damages may be awarded on the state law unfair competition claim.") (citing *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir. 1989) ("[W]e see no merit in [the offending party's] contention that punitive damages are not available under New York law for a claim of unfair competition.")).

**Objection:** Bilt Rewards objects to this proposed instruction as incomplete, inaccurate and misleading as unfair competition under New York common law requires an additional showing of bad faith or intent. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) ("[Plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith.");

*EXHIBIT G*

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 598 (S.D.N.Y. 2010) (The same standards that govern a Lanham Act claim apply to a claim of unfair competition under New York common law, "except common law requires a showing of bad faith or intent" because "[t]he essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. Central to this notion is some element of bad faith.").

**Bilt Inc.'s Response to Bilt Tech.'s Objection:** Bilt Tech.'s objection regarding bad faith misconstrues the proposed jury instruction, which specifically states that the jury can "award punitive damages for the claimant's New York common law unfair competition claim if [they] conclude by clear and convincing evidence that the offending party's conduct has constituted gross, wanton, or willful fraud or other extremely unethical conduct."

*EXHIBIT G*

JURY INSTRUCTION NO. 38

Jury Deliberations

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—in fact any communication with the Court— should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

Many of you have taken notes during the trial. I want to emphasize to you that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in the determination of the case than the recollections or impressions of other jurors, whether from notes or memory. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

You will now return to decide the case.  In order to prevail, the parties must sustain their burdens of proof as I have explained to you with respect to each element of their asserted claims. If you find that a party has succeeded in meeting its burden of proof on a claim, you must return a verdict in its favor on that claim. If you find that a party failed to sustain its burden on any element of a claim, you must return a verdict against that party on that claim.

79

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that you should be in agreement with the verdict which is announced in Court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

I have prepared a special verdict form for you to use in recording your decisions. On this form, there are spaces to indicate your verdict on each party's respective claims.

This concludes my instructions to you.  At this time, let me thank each of you for your thoughtful attention throughout this trial.  I will ask you to wait for a few moments while I discuss

*EXHIBIT G*

with counsel whether there is anything further that I need to tell you before asking you to begin your deliberations.

**Authority:** Adapted from 4 L. Sand et al., *Modern Federal Jury Instructions - Civil* § 78.01 (2022); *Lexington Furniture Industries, Inc., d/b/a Lexington Home Brands v. The Lexington Company, AB, d/b/a The Lexington Clothing Company*, No. 1:19-cv-06239-PKC (S.D.N.Y. June 3, 2022) (Castel, J.) (ECF No. 221).


  */s/ Mark D. Litvack*                                            */s/ Raymond P. Niro*

Dated:                                                                          Dated:

   PILLSBURY WINTHROP SHAW PITTMAN LLP

   MARK D. LITVACK
   RYAN R. ADELSPERGER
   31 West 52nd Street
   New York, NY 10019
   *mark.litvack@pillsburylaw.com*
   *ryan.adelsperger@pillsburylaw.com*
   Tel:  (212) 858-1000
   Fax: (212) 858-1500

   CAROLYN S. TOTO (*pro hac vice*)
   725 South Figueroa Street, 36th Floor
   Los Angeles, CA 90017-5406
   *carolyn.toto@pillsburylaw.com*
   Tel: (213) 488-7100
   Fax: (213) 226-4018

   *Attorneys for Plaintiff/Counterclaim-Defendant*
   *BILT TECHNOLOGIES, INC.*

NIRO MCANDREWS, LLP

Raymond P. Niro, Jr. (*pro hac vice*)
*RNirojr@niro-mcandrews.com*
Kyle D. Wallenberg (*pro hac vice*)
*KWallenberg@niro-mcandrews.com*
21660 West Field Parkway, Suite 118
Deer Park, Illinois 60010
(312) 755-8575

*Attorneys for Defendant/Counterclaim-Plaintiff BILT, Inc.*